**William BIGGE, Plaintiff–Appellant,**

v.

**ALBERTSONS, INC., Defendant–Appellee.**

**Nos. 88–3468, 88–3721.**

United States Court of Appeals, Eleventh Circuit.

Feb. 12, 1990.

Richard Siwica, Egan, Lev & Siwica, Orlando, Fla., for plaintiff-appellant.

Miranda Franks Fitzgerald, Maguire, Voorhis & Wells, P.A., Orlando, Fla., for defendant-appellee.

Before ANDERSON and EDMONDSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

William Bigge sued his former employer Albertsons, Inc., for alleged violations of Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e *et seq.* This appeal concerns count two of Bigge's complaint in which he alleged that Albertsons terminated him in retaliation for his opposition to unlawful and discriminatory employment practices. Following a non-jury trial, the United States District Court for the Middle District of Florida found against the plaintiff and dismissed his action.[1] The district court also awarded Albertsons attorney's fees. Bigge appeals the dismissal of his retaliatory discharge claim and the award of attorney's fees. Because we conclude that the district court applied the incorrect legal standard, we remand the case for further proceedings.

Bigge is of Oriental–Pacific Islander heritage. Albertsons hired Bigge as a polygraph examiner in October, 1982, and the defendant initially assigned him to its south Florida stores. Due to the consolidation of its polygraph department in October, 1984, Albertsons required Bigge to relocate to the Orlando, Florida area where he worked with his supervisor, Ubaldo Collazo, and two other polygraph examiners, Wendell Lee and Joe Brown. The examiners traveled to designated stores during the week to administer polygraph examinations and returned to the Orlando office on Friday or Saturday of each week.

Shortly after his relocation to Orlando, Bigge took exception to certain comments directed toward him and to certain tasks delegated to him by his co-workers.[2] Collazo addressed Bigge's complaints of racial slurs, and these comments ceased for some time but began anew on at least one occasion.

Prior to and after Bigge's relocation to Orlando, several of Albertsons' employees criticized both the scope of Bigge's examinations and the methods he employed. Collazo investigated their complaints and gen-

---

1. The district court also dismissed the plaintiff's claim premised on allegations of a hostile work environment. That ruling was not appealed.

2. His co-workers referred to Bigge as "China-boy," "house-boy" and "Chink." They contend that these references were made in jest. Bigge participated in this "name-calling" to some degree, referring to Lee as a "South Carolina red-neck," to Brown as a "damn Yankee" and to Collazo as a "damn Puerto–Rican." The allegedly demeaning tasks included bringing soft drinks to his co-workers and hanging pictures on the office walls. Lee and Collazo testified that each of them on occasion returned with soft drinks for the others, and Collazo testified that he also hung pictures.

erally found them to be without merit. He counselled Bigge on at least two occasions.[3]

Despite Collazo's efforts to address his charges, Bigge remained dissatisfied and reduced his grievances to writing in a letter to Gary Allen, vice-president of Albertsons Southern Region.[4] Collazo, who received a copy of the letter, spoke with Bigge and understood the matter to have been settled. However, Bigge subsequently requested a meeting with Allen to discuss the May 24th letter.[5] This meeting occurred on June 10, 1985.

Only Bigge and Allen were present at the June 10th meeting.[6] Bigge raised again his concerns of discriminatory treatment and brought to Allen's attention for the first time his belief that Albertsons abused the polygraph examinations as a means of discriminating against handicapped persons, pregnant females, union sympathizers and black persons.[7] Evidently relying upon Allen's affidavit and with the mistaken impression that Materni corroborated Allen's statements, the district court found that:

> Allen advised plaintiff of complaints which had been made against him, of the fact he had been leaving work early, that he had been given special consideration, and he had been given chances more than others, and that if he could not get

along with Collazo, he had best make some change for his future.

ROA Vol.2–34–12. The district court also found that Bigge had indicated an inability to continue working with Collazo.[8] *Id.* at 20.

Bigge confirmed this meeting with a letter to Allen dated June 10, 1985. He repeated his complaints of discriminatory treatment and added that "you [Allen] conceded that Mr. Collazo had been referring to me [Bigge] in discriminatory terms, but ... you had to back him [Collazo] up." Brief of Appellant at p. 15, quoting June 10, 1985 letter.

Allen convened a meeting with Bigge on June 15, 1985. Materni was present on this occasion, and he testified at the trial with the aid of notes taken during the meeting. He stated that Allen reviewed the June 10th letter with Bigge "line by line," that Allen accused Bigge of misquoting him in the letter, that Allen did not believe Bigge's allegations of discrimination, that Allen criticized Bigge for cancelling two polygraph examinations on June 13, 1985, and that Allen noted employees' complaints regarding Bigge's polygraph examination technique.[9] Following this review, Allen terminated Bigge. Bigge's employee status report reflected that he had been fired

---

3. Testimony at the trial indicated that on one occasion Collazo intervened on Bigge's behalf when other Albertsons officials considered terminating him.

4. In this letter, dated May 24, 1985, Bigge reiterated his belief that he was being discriminated against because of his Hawaiian–Asian ancestry. He specifically identified Collazo as having called him derogatory names and as having ordered him to perform demeaning tasks.

5. Prior to this meeting, Bigge's co-workers Lee and Brown had requested and received separate meetings with Allen. Lee testified that he complained of the working conditions in the polygraph department. He objected to Bigge's practice of taking notes of various incidents which occurred in the office. Bigge in fact kept a "diary" in which he recorded these incidents.

6. The district court erroneously stated that John Materni, Albertsons' director of employee relations, attended this meeting. Albertsons concedes that he was not present. Allen no longer works with Albertsons and did not testify at the

trial. Thus, other than Bigge's testimony, the only evidence of what transpired at that meeting is contained in Allen's affidavit, which was developed in response to Bigge's Equal Employment Opportunity Commission ("EEOC") complaint and which was introduced at the trial as part of the Plaintiff's Exhibit No. 27. The parties did not include that exhibit as part of the record on appeal.

7. Bigge contends that he had spoken previously of these problems to Collazo and his other co-workers.

8. Bigge denied having made such statement.

9. Testimony at the trial established that Bigge had cancelled the final two examinations scheduled on June 13th. The testimony was in dispute as to the propriety of that action. Materni's notes taken during the June 15th meeting do not include specific reference either to the cancellation of these examinations or to any complaints lodged against Bigge's examination technique.

for causing unrest or disturbance. Allen elaborated on the form as follows:

> Mr. Bigge was terminated because he could no longer effectively work with his supervisor. Mr. Bigge made certain allegations against Collazo that proved to be unfounded. He was inconsiderate and antagonistic towards other members of his department which undermined his department's morale. Mr. Bigge's action and negative attitude towards the company and his responsibilities as a polygraph examiner left the company with no choice but to terminate him.

Brief of Appellant at 17.[10]

Bigge pursued his allegations of discrimination before the Equal Employment Opportunity Commission. Following the Commission's determination that no cause existed to believe the plaintiff's allegations, he filed this action.

The district court found that the "plaintiff failed to establish that the defendant discriminated against him or any other of its employees. Hence, the alleged objection [to such discrimination] is totally without merit or support. There is no evidence that plaintiff's termination grew out of any protected activity." ROA Vol.3–34–20. The district court concluded that "[t]he evidence being as clear as it is, and failing to show any discrimination against plaintiff, or any other persons or class of persons, a charge of discrimination was wholly frivolous and false." *Id.* at 21. In buttressing its decision to dismiss the plaintiff's complaint, the district court stated that even assuming that the plaintiff's complaints of discrimination were protected activity, "the evidence clearly shows plaintiff would have been terminated in any event." *Id.* at 20. The court identified several statements and acts as sufficient reason to discharge Bigge, including Bigge's statement that he could no longer work with Collazo, Bigge's insubordination, Bigge's letter of June 10, 1985, "confirming" the meeting with Allen,

and Bigge's cancellation of the polygraph examinations on June 13th. *Id.* at 20. The district court concluded that Bigge was discharged "for cause unrelated to any protected activity." *Id.* at 21.

■ To prove a prima facie case of a violation of 42 U.S.C. § 2000e–3(a),[11] sometimes referred to as the opposition clause, a plaintiff must establish "(1) that there was a statutorily protected participation; (2) that an adverse employment action occurred; and (3) that there was a causal link between the participation and the adverse employment action." *Simmons v. Camden County Bd. of Education,* 757 F.2d 1187, 1189 (11th Cir.1985), quoting *Whatley v. Metropolitan Atlanta Rapid Transit Authority,* 632 F.2d 1325, 1328 (5th Cir. Unit B, 1980); *see McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The first element is established if the plaintiff can show that he opposed an unlawful employment practice which he reasonably believed had occurred. *Wu v. Thomas,* 863 F.2d 1543, 1549 (11th Cir.1989). Evidence that the protected activity and the adverse employment action were not totally unrelated satisfies the third prong of proof of a prima facie case. *Simmons,* 757 F.2d at 1189. Where a plaintiff has failed to produce direct evidence of discrimination, a defendant employer may rebut the prima facie case of retaliation by articulating legitimate reasons for the employment action, whereupon the plaintiff must prove by a preponderance of the evidence that the employer's articulated reasons constitute a pretext for discrimination. *Id.* In rebutting the plaintiff's prima facie case, a defendant employer must only produce credible evidence supporting its legitimate reasons. The employer does not bear the burden of persuasion.[12] That burden remains with the plaintiff and is carried with evidence that the plaintiff's engagement in protected activity was a significant factor in the employer's

---

10. Materni read the above statement into the record at the trial. ROA. Vol.3–24.

11. That section provides in pertinent part as follows:

    It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for em-

ployment ... because he has opposed any practice made an unlawful employment practice by this subchapter....

12. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254–55 and 257–58, 101 S.Ct. 1089, 1094 and 1096, 67 L.Ed.2d 207, 216 and 218 (1981).

decision. *See Smalley v. City of Eaton-ville,* 640 F.2d 765, 769 (5th Cir. Unit B 1981)[13] (plaintiff must prove that he was fired "because of" his opposition to unlawful employment practices); *Whiting v. Jackson State University,* 616 F.2d 116, 121 (5th Cir.1980) (impermissible factor must be a significant factor in employer's decision); *Lincoln v. Board of Regents of University System,* 697 F.2d 928, 938 (11th Cir.1983), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983) (plaintiff must prove that [opposition to unlawful employment practice] was a *significant* factor in the employer's decision) (emphasis in original).[14] Reliance upon "an insignificant unconstitutional factor does not warrant relief, but significant reliance on an impermissible factor is a violation." *Lee v. Russell County Bd. of Education,* 684 F.2d 769, 775 (11th Cir.1982).

■ At the trial, Bigge presented considerable evidence which, if believed, would support a finding that he held a reasonable belief that Albertsons had engaged in or was engaging in unlawful and discriminatory employment practices.[15] He testified that Collazo had informed him of Albertsons' policy against hiring black persons in managerial positions. ROA Vol.3–79. He identified Pat Dean, the company's secretarial trainer, as stating that Albertsons does not hire black persons for secretarial jobs. *Id.* at 82. Bigge described an incident during which Collazo both referred to a black employee in derogatory terms and ordered Bigge to falsify the polygraph test

results to justify discharging that employee on allegations of theft. *Id.* at 84. Bigge also testified that Albertsons employed the polygraph tests as a means of denying employment to pregnant women. First, Albertsons refused to administer polygraph tests to pregnant females. Later, Albertsons administered such tests only after receiving a doctor's approval. Since polygraph examinations were a condition of employment, Bigge contends that these policies effectively eliminated most pregnant women from the employment pool. *Id.* at 88–90. He identified examples of Albertsons' discriminatory employment practices with respect to handicapped persons. *Id.* at 90–91. He also described Albertsons' efforts to screen its job applicants and employees for their pro-union sympathies. Bigge explained that the letter "U,"[16] when placed in a particular location on the polygraph form, identified an individual as pro-union and that individuals so identified either were not hired or were fired. *Id.* at 92–94.

Upon hearing the testimony and considering the evidence, some of which corroborated Bigge's testimony while other evidence was contradictory, the district court determined that Albertsons had discriminated against neither the plaintiff nor any other Albertsons employee. We may not set aside the district court's findings of fact unless they are clearly erroneous. *Lincoln,* 697 F.2d at 939, citing Fed.R. Civ.P. 52(a); *see Pullman Standard v. Swint,* 456 U.S. 273, 285–90, 102 S.Ct. 1781,

13. In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit adopted as precedent all decisions of Unit B of the former Fifth Circuit.

14. In *Lincoln,* the court stated that a plaintiff will "prevail on a showing that, although legitimate grounds for the defendant's action existed, the action would not have been undertaken 'but for' her race." *Id.* at 938. In footnote 12, the panel noted that the "but for" standard had come under heavy criticism. *See also Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1558 at n. 9 (11th Cir.1983). The appellee's attorney referred to this statement during oral argument. The present posture of this case makes any comment premature.

15. By including illustrations of Bigge's evidence we do not intend to usurp the district court's task of finding the facts. Nor do we infer that

any of its previous findings are erroneous. We merely note the evidence supporting Bigge's position.

16. The district court stated in its order at pages 16–17 that the letter "U" meant "unresolved." That notation in a particular column indicated that the polygraph examination was not dispositive of an applicant or an employee's employment status. However, the testimony established that the letter "U" sometimes appeared in other places on the form. Bigge testified that such notation indicated pro-union sympathies. Bigge pointed to the word "union" on one form. *Id.* at 94. The district court in grouping all such notations together appears to have overlooked the distinction.

1788–91, 72 L.Ed.2d 66, 78–81 (1982). However, the clearly erroneous standard does not govern findings made under an erroneous view of controlling legal principles. *Harris v. Birmingham Bd. of Education*, 712 F.2d 1377, 1381 (11th Cir.1983). A reading of the district court's order makes it clear that, contrary to *Wu v. Thomas, supra,* the court incorrectly required the plaintiff to prove that Albertsons in fact had discriminated or was discriminating against either the plaintiff or some other Albertsons employee or applicant for employment. The plaintiff did not bear such a burden; he needed only to prove that he opposed an unlawful employment practice which he reasonably believed had occurred or was occurring. This erroneous perception of the law undermines the district court's conclusion that the appellant was not engaged in protected activity, and we believe that the district court should reconsider the evidence in light of the correct legal standard.

■ Albertsons urges that we should affirm the district court's conclusion despite this error because of the court's apparent unwillingness to credit the plaintiff's testimony. We decline to do so. The relevance of much of Bigge's testimony and evidence takes on added importance when viewed against the proper legal criteria. We think the district court's use of the wrong legal standard sufficiently taints and infects its finding that the plaintiff was not involved in protected activity to remand the case for a determination under the proper standard.

On remand, the district court should ascertain whether Bigge opposed an unlawful employment practice which he reasonably believed had occurred or was occurring.[17] A negative answer to that question, if supported by the evidence,[18] makes unnecessary any further inquiry.

■ Albertsons next asserts that even if the district court erred in the application of the wrong legal standard we should affirm the judgment based on the court's alternative finding that "even if … plaintiff's complaints were protected activity, the evidence clearly shows plaintiff would have been terminated in any event." ROA Vol. 3–34–20. Following this conclusion, the district court identified several acts any one of which it deemed "sufficient reason to discharge [Bigge]." *Id.*

■ This finding is conclusory and incomplete. *See Golf City, Inc., supra.* Assuming, as the district court did, that the plaintiff was engaged in protected activity, the order could be read to mean that Bigge failed to establish any causal connection between the protected activity and the adverse employment action.[19] Or, assuming that the plaintiff has established such a connection, the district court's order could be construed to mean that Bigge failed to establish by a preponderance of the evidence that his opposition to Albertsons' allegedly unlawful employment practice was a "significant factor" in its decision to terminate him.[20] In either case, the plaintiff's opposition to Albertsons' employment practices, if reasonable, and Albertsons' response to such opposition, might affect the district court's subsequent findings.

Rather than speculate as to the district court's meaning, we think the better prac-

---

17. After answering that question, the district court should state its findings and reasons with sufficient particularity to enable the appellate court to determine rather than to speculate that any finding is supported by the evidence and any conclusion has a proper legal basis. *See Golf City, Inc. v. Wilson Sporting Goods, Co.,* 555 F.2d 426, 435 (5th Cir.1977), cited in *Lee v. Russell County Bd. of Education,* 684 F.2d 769, 775 at n. 9 (11th Cir.1982).

18. *See Lincoln,* 697 F.2d at 939.

19. Assuming that Bigge was engaged in protected activity, such a finding appears dubious. Collazo testified that Bigge's job was not in jeopardy prior to Bigge's letter of May 24, 1985.

In that letter and in the meetings and letters which followed, Bigge made numerous allegations of discrimination. Allen's termination statement referred to those allegations. The unrest and disturbance noted as the reason for Bigge's termination stemmed at least in part from Bigge's allegations, as did Bigge's "negative attitude" regarding his polygraph responsibilities. These facts appear to establish a "causal link" between Bigge's opposition and Albertsons' action.

20. We note that this inquiry differs somewhat from that undertaken by the district court. The district court found that "there were abundant bases for [Bigge's] discharge." ROA Vol.3–34–20. That Albertsons had one or many reasons

tice requires us to remand this case to the district court for further proceedings. Specifically, the district court first should determine whether the plaintiff opposed a discriminatory employment practice which he reasonably believed had occurred or was then prevalent in Albertsons' organization. A determination that Bigge held no such reasonable belief ends the inquiry. However, if that question is answered affirmatively, the district court then should analyze the evidence in light of Albertsons' proffered reasons for dismissing Bigge. This evaluation should include whether Bigge's termination was in some way related to his opposition to Albertsons' alleged discriminatory employment practices. If so, the district court finally must consider whether Bigge's opposition was a significant factor in Albertsons' decision to terminate him. *See supra* notes 19–20 and accompanying text.

REMANDED.[21]

to terminate Bigge is not dispositive if included among those reasons was Bigge's opposition to Albertsons' discriminatory employment practices. The investigation should focus upon whether Bigge's opposition was a significant factor in Albertsons' decision to discharge him and not on whether other legitimate reasons existed. Furthermore, sufficient evidence must exist to establish that the reasons asserted for Albert-

sons' termination of Bigge were those reasons actually relied upon. *See Lee,* 684 F.2d at 775.

21. Our disposition of this appeal makes it unnecessary to consider the matter of attorney's fees. That question can be raised anew pending the results of the remand.