**Sandra L. PADRON, Plaintiff,**

v.

**BELLSOUTH TELECOMMUNICATIONS, INC., a foreign corporation authorized to do business in Florida, Defendant.**

No. 00–3489–Civ.

United States District Court,
S.D. Florida,
Miami Division.

April 2, 2002.

---

Paul Capua, Lorenzo & Capua, Miami, Florida, for plaintiff.

Ellen M. Leibovitch, Adorno & Zeder, P.A., Boca Raton, Florida, James R. Glenister, Mark F. McIntosh, Atlanta, Georgia, for defendant.

### ORDER GRANTING MOTION FOR SUMMARY JUDGEMENT

KING, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judge-

ment, filed on October 25, 2001. Plaintiff filed a response on November 14, 2001, and Defendant replied on November 21, 2001.

This case involves claims of retaliation and disparate treatment under the Florida Whistleblower Act. Plaintiff alleges she was terminated and harassed for reporting illegal "cramming" practices by Defendant BellSouth.[1] BellSouth states that the Plaintiff was legitimately fired for violating company policies by accessing a business account for her brother and that any discipline received prior to termination was based on customer complaints.

## I. Standard of Review

Summary judgment is appropriate only where it is shown that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the record as a whole could not lead a rational fact-finder to find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is no requirement that the trial judge make findings of fact. *Id.* at 251, 106 S.Ct. 2505.

The moving party bears the burden of pointing to that part of the record which shows the absence of a genuine issue of material fact. If the movant meets its burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exists. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir.1993). To meet this burden, the non-moving party must go beyond the pleadings and "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the non-moving party, then the court should refuse to grant summary judgment. *Hairston*, 9 F.3d at 919. However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. If the evidence is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50, 106 S.Ct. 2505.

## II. Background

Plaintiff Padron was hired by Defendant BellSouth in February, 1990, as a service representative in the Consumer Services Division. She later transferred to the Multi–Lingual Group as a sales representative, which is the position she held until her termination on August 24, 1999.

During Padron's time at BellSouth the company was involved in disputes over alleged cramming practices. Because of previous litigation arising from these disputes, the company was obliged to comply with stipulations from the Statewide Prosecutor's Office. Among other things, BellSouth stipulated it would cease any cramming practices it was engaged in and any employees it discovered to be engaging in

---

1. Cramming can include such practices as misrepresenting services to customers or placing services on customer accounts without authorization from the customer. For example, cramming includes signing a customer up for a cellular phone never ordered by the customer.

cramming would be identified to the State-wide Prosecutor's Office. Additionally, the stipulations included the provision that:

employees or former employees shall not be disciplined or terminated in whole or in part at any time, for their testimony, whether voluntary or compelled, or for the fact of their cooperation with the Office; with any other Florida agency involved in the investigation, unless such employee violated written company policy or knowingly gave false material information during the course of such cooperation. Criminal Case Stipulation ¶ 11

The Statewide Prosecutor's Office monitored BellSouth for three years beginning in October, 1992 (the "Oversight Period"). During the Oversight Period, BellSouth taught Sales Representatives legal and ethical selling practices and stringent procedures were implemented for sales calls. The Oversight Period saw a marked decrease in the number of customer complaints concerning cramming.

Once the Oversight Period ended, the Plaintiff claims the unethical cramming practices began to appear again and that even BellSouth managers began directly engaging in cramming.[2] In late 1997 to early 1998, Plaintiff and others notified Assistant Manager Falero about unlawful cramming practices by other Sales Representatives. Plaintiff asserts that no sales Representatives were disciplined for illegal or unethical sales practices between 1996 and 1998.

On June 3, 1999, Padron and four other Sales Representatives filed a substantial twenty-three page "Formal Complaint of Illegal and Unethical Activities Occurring at the BellSouth Corporation, Consumer Services, Multi–Lingual Marketing Department in Miami, Florida" (the "Com-plaint"). The Complaint, which condemned sales practices at BellSouth, was delivered to BellSouth management, the Communications Workers of America, the Federal Communications Commission and the Florida Public Service Commission.

Hilda Geer, during the time much of the cramming complained of in the Complaint, was then the Operations Manager of Florida Compliance and Assistant Vice–President of South Florida. Greer was responsible for ensuring compliance with the stipulations and other mandates of the Statewide Prosecutor's Office against cramming. Geer, although unsure of the exact timing, acknowledges having read the Complaint sometime in July or August of 1999. Geer terminated Padron on August 24, 1999. She claims Padron was terminated because of an internal security investigation into Padron's misconduct. Specifically she was terminated pursuant to the findings set forth in an internal memorandum, entitled "Employee Defalcation" from BellSouth's security division. This memorandum detailed that Padron had accessed and changed an AT & T business account for her brother, Albert Padron, without supervisory approval on April 13, 1999. Because the account was a restricted AT & T account, AT & T continued to receive the bill. When AT & T received the bill they contacted BellSouth, and a Customer Service Associate ("CSA") from the BellSouth Account Center contacted Padron. The memorandum further claims that Padron initially stated to the CSA that she had changed the account because she was working on a special project; the memorandum also states she later denied having told the CSA she had been working on a project. An investigation was begun by BellSouth's security

---

2. Plaintiff alleges that cramming was encouraged or permitted to maximize profits per customer. Individual Sales Representatives engaged in the practice to increase their sales and become eligible for prizes and bonuses.

office on July 6, 1999. AT & T also began an internal investigation of their employee, Albert Padron. On August 13, 1999, AT & T notified BellSouth's security office that it had completed their investigation. The memorandum from security was dated August 19, 1999, and Padron was terminated on August 24, 1999.

## III. Claims Under Florida Whistle-blower's Act

Plaintiff brings her claims under the Florida Whistleblower Act, which states:

An employer may not take any retaliatory personnel action against an employee because the employee has:

(1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy or practice.

(2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducing an investigation, hearing, or inquiry into any alleged violation of a law, rule, or regulation by the employer.

(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation. § 448.102(3), Fla. Stat.

Further the Act provides that:

An employee may not recover in any action brought pursuant to this subsection if he or she failed to notify the employer about the illegal activity, policy, or practice as required by § 448.102(1) or if the retaliatory personnel action was predicated upon a ground other than the employee's exercise of a right protected by this act. Fla.Stat. § 448.103(1)(c).

■ The Court applies the state's substantive law in this diversity case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). There is no Florida case law on treatment of claims brought under this Act, but the Eleventh Circuit Court of Appeals has stated that for claims brought pursuant to the Florida Whistleblower Act: "[i]n the absence of any guiding case law, the district court correctly applied the analysis used in Title VII retaliation cases." *Sierminski v. Transouth Financial Corporation*, 216 F.3d 945 (11th Cir.2000). This Court will continue to use the burden shifting proof standards for retaliation cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the federal equivalent to Florida's Whistleblower's Act.

### A. Retaliatory Termination

■ To prove a prima facie case a plaintiff must establish "(1) that there was a statutorily protected participation; (2) that an adverse employment action occurred; and (3) that there was a causal link between the participation and the adverse employment action." *Bigge v. Albertsons, Inc.*, 894 F.2d 1497, 1501 (11th Cir.1990) (quoting *Simmons v. Camden County, Bd. of Education*, 757 F.2d 1187, 1189 (11th Cir.1985)) (quoting *Whatley v. Metropolitan Atlanta Rapid Transit Authority*, 632 F.2d 1325, 1328 (5th Cir. Unit B, 1980)); *see McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Statutorily protected participation is established if Plaintiff can show that she opposed an unlawful employment practice which she reasonably believed had occurred. *See Wu v. Thomas*, 863 F.2d 1543, 1549 (11th Cir.1989). The signing and sending of letter detailing

legal abuses by BellSouth satisfies this first prong. It is undisputed that Plaintiff was fired and that termination is an "adverse employment action." Plaintiff must produce evidence that the protected activity and the adverse employment action were related to satisfy the third prong of proof of a prima facie case. *Simmons,* 757 F.2d at 1189.

■ Plaintiff's sole basis for meeting the third prong of proof of a prima facie case comes from the close temporal proximity between Padron's signing of the Complaint and her firing. "For purposes of a prima facie case, 'close temporal proximity' may be sufficient to show that the protected activity and the adverse action were not 'wholly unrelated.'" *Gupta v. Florida Board of Regents,* 212 F.3d 571, 590 (11th Cir.2000), *cert. denied* 531 U.S. 1076, 121 S.Ct. 772, 148 L.Ed.2d 671 (2001). Plaintiff has produced evidence that the Complaint was read by Geer (the decision maker) within a month or two of Padron being fired. This could constitute close temporal proximity. *See, e.g., Donnellon v. Fruehauf Corp.,* 794 F.2d 598 (11th Cir.1986) (finding that one month was evidence of retaliation); Cf. *Wascura v. City of South Miami,* 257 F.3d 1238, 1247 (11th Cir.2001) (finding that three and a half months was too long, standing alone, to show close temporal proximity). Whether Plaintiff can make a prima facie case is unimportant, because Defendant has proffered a legitimate nondiscriminatory reason for the adverse employment actions and there is no evidence of pretext. Therefore the Court will assume that because the events occurred within one or two months, this establishes close temporal proximity. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997). This establishes Plaintiff's prima facie case through circumstantial evidence.

Because Plaintiff relies on circumstantial evidence, BellSouth may rebut the prima

facie case of retaliation by articulating legitimate reasons for the adverse employment action. *Bigge,* 894 F.2d 1497, 1501. The burden is shifted to the Defendant to proffer a legitimate reason for the adverse action. *See, e.g., Olmsted v. Taco Bell,* 141 F.3d 1457, 1460 (11th Cir.1998). The standard to do so is low. "In rebutting the plaintiff's prima facie case, a defendant employer must only produce credible evidence supporting its legitimate reasons. The employer does not bear the burden of persuasion. That burden remains with the plaintiff and is carried with evidence that the plaintiff's engagement in protected activity was a significant factor in the employer's decision." *Bigge,* 894 F.2d 1497, 1501.

■ Defendant alleges Padron was fired for misconduct relating to her unauthorized access of a business account. It is a legitimate reason to fire an employee when that employee accesses and changes accounts without permission or authority. As detailed above, Defendant has supported this reason with credible evidence, including the memorandum detailing the investigation of Padron's alleged misconduct. This satisfies the Defendant's burden. *See Texas Dep't. of Comty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

As the Defendant articulated a legitimate reason, the presumption of discrimination is eliminated. The Plaintiff must now present evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable jury to conclude that the reason given by the Defendant was not the real reason for the adverse employment decision. *See Wascura,* 257 F.3d at 1243; *Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir.2000) (en banc); *Combs,* 106 F.3d at 1528. The Plaintiff must proffer sufficient evidence to create a genuine is-

sue of material fact as to whether the Defendant's proffered reason is pretextual, or the defendant will be entitled to summary judgment. *Wascura,* 257 F.3d at 1243. "[T]he inquiry now turns from the few generalized factors that establish a prima facie case to the specific proofs and rebuttals of discriminatory motivation the parties have introduced." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 516, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Plaintiff relies on six arguments to show that BellSouth's firing of Padron was a mere pretext. The Court addresses each of these in turn.

### (1) Temporal Proximity

For the purposes of the prima facie case, close temporal proximity may be sufficient to show that the protected activity and the adverse action were not wholly unrelated. *Gupta,* 212 F.3d at 590. The evidence used to establish the prima facie case may also be used to establish that an employer's stated reason is a mere pretext. *See Burdine,* 450 U.S. at 256, 101 S.Ct. 1089. Plaintiff's evidence in this case fails to do so.

The other two cases Plaintiff relies on regarding close temporal proximity are both distinguishable from the case at hand because the timing issue in each case was coupled with further evidence of retaliation. In *Swanson* the complaint of harassment was made directly and specifically against the person making the decision to fire the plaintiff in that case. *Swanson v. Civil Air Patrol,* 37 F.Supp.2d 1312 (M.D.Ala.1998). In this case, the Complaint, although severe in its criticisms of BellSouth, was made against the company and did not mention Greer at all. In *Harris,* the defendant deviated from its own policies to fire the plaintiff after a complaint of discrimination. *Harris v. Warehouse Services, Inc.,* 77 F.Supp.2d 1240 (M.D.Ala.1999). In this case, the

Plaintiff was fired only after an investigation was begun and completed by another office of BellSouth and by AT & T. There is no evidence that the Defendant deviated from its own policies in any way by firing the Plaintiff. The other employees that signed the Complaint were not fired. Standing alone against Defendant's strongly supported legitimate reason for terminating Padron, temporal proximity does not amount to more than a scintilla of evidence of retaliation. This is insufficient. *See Elrod v. Sears, Roebuck and Co.,* 939 F.2d 1466, 1469 (11th Cir.1991); *Earley v. Champion International Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990). Nor does it move the case forward from the prima facie case to "the specific proofs and rebuttals of discriminatory motivation the parties have introduced." *St. Mary's Honor Center,* 509 U.S. at 516, 113 S.Ct. 2742.

### (2) Shifting Explanations

The second reason Plaintiff gives to show pretext is that BellSouth changed or shifted its explanations of why it fired Padron. There is case law that shifting explanations by an employer may lead to a finding of pretext. *See Payne v. Norwest Corp.,* 113 F.3d 1079 (9th Cir.1997). This case is distinguishable from *Payne.* BellSouth never changed from its basic premise that Padron was fired for accessing a business account, for a relative, without permission. Even if BellSouth stated this reason in a different fashion, when the reasons are substantially the same, it is not evidence of pretext. *See, e.g., Bartalini v. Blockbuster Entertainment, Inc.,* 1999 WL 1012383, 8 (N.D.Cal.1999).

### (3) Notice

█ Third, Plaintiff claims that BellSouth failed to give notice to Padron of the primary rule she was alleged to have vio-

lated. Plaintiff cites no cases to show how this would lead to a finding of pretext, and this Court has found no cases that do so. This is probably due to the fact that there is an overwhelming amount of case law that says the reasonableness of the employer's decision does not matter. *Elrod,* 939 F.2d at 1469. BellSouth can fire its employees as long as its reasons are not in violation of the law or a contract. BellSouth can fire an employee if it is mistaken about the misconduct it believes the employee committed. *Id.* The Court will not "sit as a super-personnel department that reexamines an entity's business decisions." *Id.* (quoting *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988)).

### (4) Similarly Situated

Fourth, Plaintiff claims that BellSouth cannot prove it has ever terminated an employee for accessing or altering a relative's account. Despite stating this is perhaps Plaintiffs most compelling argument, Plaintiff again fails to cite a case that supports its theory that this is the employer's burden. This is likely due to the again overwhelming amount of case law that states that it is the plaintiff who bears the burden to show that similarly situated employees were not fired for similar conduct. *See, e.g., Jones v. Gerwens,* 874 F.2d 1534, 1540 (11th Cir.1989). Plaintiff can only name one employee that Plaintiff claims was similarly situated and not fired. This other employee accessed a *residential account,* did *not change the account,* and was dealt with by *another supervisor. See id.,* at 1541 (holding that disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis). This is not a similarly situated employee. The law require that "the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers reasonable decisions

and confusing apples with oranges." *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.1999). Additionally, none of the other four signors of the Complaint were fired. Not only does the Plaintiff fail to show a similarly situated employee that was not fired, but the Defendant does provide a list of three other employees that were fired by Geer between 1997 and 1999 for improper access of an account without a valid reason. *See* Exhibit 2 to the Affidavit of Hilda Geer.

### (5) Enhanced Scrutiny

Plaintiff claims that BellSouth built a paper record against her and that this establishes pretext. In support of this, Padron cites a Third Circuit Court of Appeals case that found that placing a employee on probation, in addition to other hostile conduct, could lead a jury to reasonably find constructive discharge. *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1075 (3rd. Cir.1996). In that case, the Appeals Court used "an objective test to determine whether 'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.' *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1084 (3d Cir.1996) (quoting *Goss v. Exxon Office Sys. Co.,* 747 F.2d 885, 888 (3d Cir.1984))." *Id.* As discussed below, the addition of minor notations in a personnel file could hardly be "so intolerable that a reasonable person subject to them would resign." *Id.*

### (6) Concealment

Finally, Plaintiff claims that Geer attempted to conceal her own knowledge of Padron's protected activity before making the decision to terminate her. Simply stated, unlike in *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993),

the record does not support that Geer concealed knowledge of the Complaint.

Taken individually or collectively, these six reasons fail to show that Defendant's reason for terminating Padron's employment was a pretext for retaliation. As discussed above, Plaintiff's fails in each of its six arguments to show that Defendant's reason is pretext. A reasonable jury could not find that Geer's firing of Padron is pretext based solely on the loose allegations of timing found here. Padron was investigated independently of the office that knew of the Complaint. BellSouth did not change its reasons for firing Padron. The other employees that signed the Complaint were not fired. Lacking sufficient evidence for any of its other arguments, Plaintiff has only a scintilla of evidence of pretext. That is not enough to permit a reasonable jury to conclude that the reason given by BellSouth was not the true reason for the termination of Padron's employment.

## B. Retaliatory Harassment

■■■■■ Plaintiff bases her "other adverse employment action" upon the claims that BellSouth created a hostile work environment after the Complaint was filed. The Florida Whistleblower's Act states, " '[r]etaliatory personnel action' means the discharge", suspension or demotion by an employer of an employee or *any other adverse employment action* taken by an employer against an employee in the terms and conditions of employment. Fla.Stat. § 448.101(5) [emphasis added]. Plaintiff's harassment claim rests solely on the phrase "any other adverse employment action". This phrase also appears in federal discrimination laws and absent guiding state law, the Court will apply federal case law in determining what constitutes an adverse employment action. *See Sierminski*, 216 F.3d at 950. The Eleventh Circuit Court of Appeals in a recent opinion stated that:

An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee. Conduct that falls short of an ultimate employment decision must meet some threshold level of substantiality to be cognizable under the anti-retaliation clause. In evaluating what actions meet that required level of substantiality, we recognize that Title VII is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.' Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis, using both a subjective and an objective standard.

*Gupta*, 212 F.3d at 587 (citations and internal marks omitted). Nothing alleged by Plaintiff regarding the harassment claim constitutes an "ultimate employment decision". The Court will examine if BellSouth's conduct "meet[s] some threshold level of substantiality to be cognizable under the anti-retaliation clause." *Id.*

■■■■■ The prima facie case of hostile work environment is established by (1) showing that Plaintiff is a member of a protected class; (2) that Plaintiff was subjected to unwelcome harassment; (3) that the harassment was based on the protected activities; (4) that the harassment affected a term or condition of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Harassment will not be actionable unless it is "so se-

vere and pervasive as to 'have the purpose or effect of unreasonably interfering with [Plaintiff's] work performance or creating an intimidating, hostile or offensive environment." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The United States Supreme Court has declared:

> [W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance.

*Harris,* 510 U.S. at 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Plaintiff presents no evidence that any of the conduct of the Defendant, if hostile or abusive at all, could possibly rise to the level of outrageous conduct that was found in other cases. *See, e.g., Meritor Sav. Bank FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Shepherd v. Comptroller of Pub. Accounts,* 168 F.3d 871 (5th Cir.1999). Plaintiff asserts that "Bell-South routinely reprimanded and threatened Ms. Padron with disciplinary action." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, at 13. The examples given by Plaintiff do not show that any disciplinary action taken by BellSouth constitutes harassment. In contrast, the allegations of Plaintiff are consistent with any workplace environment where an employee will be corrected by a supervisor. Even if Padron was treated rudely by supervisors, this does not constitute harassment.

### IV. Conclusion

"If the defendant has failed to sustain its burden but reasonable minds could *differ* as to whether a preponderance of the evidence establishes the facts of a prima facie case, then a question of fact *does* remain, which the trier of fact will be called upon to answer." *St. Mary's Honor Center,* 509 U.S. at 509, 113 S.Ct. 2742 (emphasis in original). In this case, no question does remain for the trier of fact to be called upon to answer. Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion for Summary Judgement be, and the same is hereby, GRANTED. It is further

ORDERED and ADJUDGED that the case is CLOSED, and all pending motions not otherwise ruled upon are dismissed as moot.