Judy COLLINS, Plaintiff,

v.

**BEAZER HOMES USA, INC. and Beazer Homes Corp., Defendants.**

No. CIV.A.1:03–CV1374RWS.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 2, 2004.

Joseph Y. Ahmad, Ahmad Zavitsanos & Anaipakos, Amir H. Alavi, Ahmad Zavitsanos & Anaipakos, Houston, TX, Adam P. Princenthal, Andrew Knowles & Princenthal, Atlanta, GA, for Plaintiff.

Weyman Thompson Johnson, Jr., Paul Hastings Janofsky & Walker, Kara L. Thompson, Paul Hastings Janofsky & Walker, Atlanta, GA, for Defendants.

## ORDER

STORY, District Judge.

Now before the Court are Defendants' Motion to Strike Plaintiff's Designation of Expert Witnesses [32–1] and Defendants' Motion for Summary Judgment [39–1].

After considering the entire record and the arguments of the parties including the parties' briefs and exhibits, the Court enters the following Order.

### Background

This case arises out of Plaintiff Judy Collins' employment with and termination from Defendant Beazer Homes Corp. On May 24, 2002, Defendant Beazer Homes Corp. ("Beazer Homes") offered Collins a position as Director of Marketing for its Jacksonville, Florida division. (Collins Dep. at 81, Ex. 6.) [1] According to the offer, Collins would be subject to a ninety day assessment review period during which "either you or the Company may decide to terminate employment without giving a reason." (*Id.*) Collins accepted the offer and began work around June 10, 2002. (*Id.*)

Soon after starting with the company, Collins began having conflicts with her manager, Division President Bill Mazar, and her coworker, Director of Sales Mary Ann Hashem. Defendants state that many of these conflicts stemmed from the use of the Montello Advertising Agency ("Montello"). (*Id.* at 105–06.) Collins contends that the dispute over Montello was the only area where she had a "personality conflict" with Mazar and Hashem. (App. to Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. J (hereinafter "Collins Aff.") ¶¶ 12–13.) Collins was not pleased with Montello's services and around July 11, 2002, she signed a contract with a new advertising agency. (Collins Dep. at 20.) However, Collins did not notify Montello that it had been replaced until July 22, 2002, after she received an email from Montello's Presi-

---

1. Defendant Beazer Homes Corp. is a wholly-owned subsidiary of Beazer Homes Holding Corp. (*See* Feb. 17, 2004 Dep. of Jennifer Jones (hereinafter "Corp. Dep.") at 26–27.) Beazer Homes Holding Corp. is a wholly-owned subsidiary of Defendant Beazer Homes USA, Inc., which is a publicly-traded company based in Atlanta, Georgia. Defendant Beazer Homes, USA, Inc. is a publicly traded company "with a class of securities registered under section 12 of the Securities Exchange Act of 1934." (Corp. Dep. at 26–27.)

dent who had heard the news from local media representatives. (*Id.* Exs. 9, 34.) Collins believed that Mazar and Hashem continued to use Montello's services behind her back even after she had terminated the agency. (*Id.* at 119–20.)

On July 30, 2002, Collins spoke with Marilyn Gardner, Vice President of Sales and Marketing for Beazer Homes USA, Inc. ("Beazer USA") about some problems in Jacksonville. (*Id.* at 89–90.) Collins indicated that she was having problems implementing marketing changes in Jacksonville, that she was having difficulty with the management style of Mazar, that she did not like how they were paying the Montello agency and did not like how marketing costs were being categorized. (Gardner Dep. at 67.) Gardner responded specifically to Collins' assertion that marketing costs were not being properly categorized. (*Id.*) Gardner asked Collins whether there were any other incidents other than marketing when invoices were not being categorized properly and Collins indicated that there were. (*Id.*) Gardner informed Collins that her concerns raised issues that were "serious allegations" and that they were "something very important" and that she needed to raise them with human resources. Gardner then arranged for Collins to meet with Jennifer Jones, Vice President of Human Resources for Beazer USA to discuss Collins' concerns.

On August 5, 2002, Collins met with Jones for about an hour and a half. Collins tape recorded the meeting but the tape ran out before the end of the meeting. (Collins Dep. at 11, 117.) During her meeting with Jones, Collins raised numerous concerns. (*Id.* at 120–10.) Jones described four main concerns that Collins expressed, including concerns that (1) the division was putting product on the land that she did not think were reasonable; (2) they were paying Montello for bills that should not be paid and were being forced to use the agency by the President of the Jacksonville division Marty Shaffer; (3) she did not particularly care for the management style of Mazar; and (4) sales agents were discontented with Hashem and the length of time it took to complete a home. (Dec. 17, 2003 Dep. of Jennifer Jones (hereinafter "Jones Dep.") at 41–42.) Based on Collins' statements to Jones, Jones began to investigate Collins' claims and spoke with various company officials. (Jones Dep. at 48.) Jones sought to determine whether the issues that Collins had raised were merely business issues or whether something criminal, against the law or against company policy was taking place. (*Id.* at 52–53.)

Regarding Collins' concerns about the types of homes being built, Jones spoke with Michael Furlow, Executive Vice President and Chief Operating Officer of Beazer USA. (*Id.* at 49.) Furlow informed Jones that this was a strategic business decision and not a human resources issue. (*Id.*) Furlow reached the same conclusion about Collins' complaint about Mazar's management style. (*Id.* at 51–52.) Regarding the payments to Montello, Jones spoke with Ian McCarthy, Chief Executive Officer of Beazer USA. McCarthy directed Jones to speak directly with Shaffer. Shaffer informed Jones that the president of Montello had called him about a past due invoice that Collins had refused to pay. Shaffer told Mazar to review the invoice, and to pay it if Beazer owed the agency money, and if not, to discuss it with Montello. (*Id.* at 50.) Mazar reviewed the invoices from Montello and paid them. (Mazar Dep. at 119.) Collins states that Mazar spoke with Shaffer and then told her that Shaffer wanted her to pay Montello regardless of the amount because Shaffer and Montello's president were friends. (Collins Aff. ¶ 9, Gardner Dep. Ex. 5.) Jones also investigated the con-

cerns surrounding the sales agents. Jones' investigation surrounding the sales agent problems ultimately resulted in Hashem's reprimand and termination. (Jones Dep. at 63; Mazar Dep. Ex. 10.)

On August 11, 2002, Collins sent an email letter to the Chief Executive Officer of Beazer USA, Ian McCarthy. (*See* Letter of August 11, 2002 from Judy Collins to Ian McCarthy, McCarthy Dep. Ex. 1.) In her letter, she alluded to her meetings with Jones and Gardner and asserted that a "cover-up/corruption" existed. (*Id.*) She did not indicate, however, any specifics. McCarthy discussed the letter with Jones and asked her to continue her investigation and report her findings to him. (McCarthy Dep. at 22.) McCarthy responded to Collins by email through his assistant and stated that the matter would be investigated and she should plan to attend the previously scheduled meeting with Shaffer scheduled for August 19, 2002.

On August 14, 2002, Collins emailed Gardner. (*See* Email from Judy Collins to Marilyn Gardner, Collins Dep. Ex. 30.) In the four page email, Collins again expressed her frustration with the investigation and complained about Montello. She alleged that Mazar told her to pay Montello regardless of the amount, that she suspected kickbacks in lumber purchases, and that marketing costs were not being properly broken-down in order to hide information. (Gardner Dep. Ex. 5.)

Prior to the August 19, 2002 meeting with Collins, Shaffer discussed Collins' complaints with Jones. (Shaffer Dep. at 69–70.) Jones informed Shaffer that Collins had made a series of complaints including allegations of a break in company policy. (*Id.* at 69.) Shaffer and Jones also discussed whether they should continue Collins' employment. Shaffer questioned Jones about the circumstances under which he could terminate Collins. (Jones Dep. at 71–73.)

On August 19, 2002, Collins met with Shaffer. Shaffer understood that one of the purposes of the meeting was for him to discuss with Collins possible violations of company policy. (Shaffer Dep. at 68.) She also tape recorded this conversation. (Collins Dep. at 158–59.) At that meeting Collins expressed numerous complaints including: her lack of input with sales agents, that Hashem did not want her in the Jacksonville office, that she could not get the information she needed to do her job, and that she was having conflicts with Mazar and Hashem over the Montello agency. (Collins Dep. at 166–72; *see* Tr. of August 19, 2002 meeting with Judy Collins and Marty Shaffer (hereinafter "Shaffer Tr."), Collins Dep. Ex. 22.) Collins did not specifically tell Shaffer that illegal activity was taking place in the company. (Collins Dep. at 183.) At the end of the meeting, Shaffer told Collins that "I don't see that this situation is going to work out between [you, Mazar and Hashem]." (Shaffer Tr. at 12.) Shaffer noted that Mazar and Hashem had been with the company for some time, and since it did not appear that the conflict with Collins was going to end, he would have to let her go. (*Id.* at 13–14.)

Although Shaffer consulted with Jones regarding Collins' termination, he states that he was the sole person responsible for terminating her. (Shaffer Dep. at 33, 36.) Shaffer stated that he terminated Collins for several reasons including Mazar's dissatisfaction with her job performance, a presentation he viewed by Collins that was "way off the mark," but primarily because she could not get along with any of her fellow employees. (*Id.* at 38–39.)

Collins filed a complaint with the Department of Labor Occupational Safety and Health Administration ("OSHA") in October 2002. (Collins Dep. at 201.) On May 20, 2003, Plaintiff filed the complaint

in this case asserting claims under the Sarbanes–Oxley Act of 2002, Public Law No. 107–204 ("Sarbanes–Oxley"), and Florida's Whistleblower's Act, Fla. Stat. § 448.102. OSHA issued its findings and preliminary order on May 22, 2003. (Defs.' Mot. for Summ. J. Ex. G (hereinafter "OSHA findings".))

## Discussion

### I. Motion to Strike Plaintiff's Designation of Expert Witnesses

■ Defendants have moved to exclude the testimony of Plaintiff's expert witness on economic damages, Haran D. Levy. Mr. Levy's identity was first disclosed to Defendants on December 30, 2003. Defendants state that the original discovery period ended on January 20, 2004 and that the parties stipulated to an extension of discovery for the sole purpose of deposing Ian McCarthy. Defendants contend that Plaintiff's disclosure of Mr. Levy's identity three weeks prior to the close of the original discovery period would result in unfair prejudice to Defendants.

Plaintiff responds that although the original discovery period was set to end on January 20, 2004 the parties did not limit the scope of the extension when the deadline was extended to February 9. Additionally, Plaintiff states that Defendants have suffered no prejudice.

■ Federal Rule of Civil Procedure 26(a)(2)(A) requires parties to disclose the identity of any expert who may testify at trial. The Local Rules require parties to designate their experts sufficiently early "to permit the opposing party the opportunity to depose the expert witness sufficiently in advance of the close of discovery." N.D. Ga. Local R. 26.2C. The Federal Rules specify that in absence of directions from the court or stipulation by the parties, "the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial." Fed.R.Civ.P. 26(a)(2)(C). Whether to exclude a party's proposed witness in this circumstance is within the discretion of the Court. *Port Terminal & Warehousing Co. v. John S. James Co.,* 695 F.2d 1328, 1335 (11th Cir.1983).

Plaintiff designated Mr. Levy as an expert with over forty days of discovery remaining and three months before Defendants filed their motion for summary judgment. Additionally, the Court notes that the trial date has not yet been set. Finally, Defendants have presented no evidence to demonstrate that they have been prejudiced by Plaintiff's failure to disclose their expert earlier. *See Shelak v. White Motor Co.,* 581 F.2d 1155, 1159 (5th Cir. 1978) (stating that defendant was not prejudicially surprised and upholding district court's decision to allow expert to testify who was not named in interrogatories).[2] Therefore the Court finds that Defendants have not been prejudiced by Plaintiff's failure to disclose the identity of Mr. Levy at an earlier date. The Court further finds that Defendants have in no way been prejudiced by the designation of Plaintiff's attorneys as experts regarding fees. Accordingly, Defendants' Motion to Strike Plaintiff's Designation of Expert Witnesses [32–1] is hereby **DENIED**.

### II. Motion for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any

2. The U.S. Court of Appeals for the Eleventh Circuit adopted as binding precedent the decisions of the U.S. Court of Appeals for the Fifth Circuit handed down prior to September 30, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981).

inferences that may be drawn in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Plaintiff asserts that Defendants retaliated against her in violation of Sarbanes–Oxley and Florida's Whistleblower's Act for reporting violations of Defendants' internal accounting controls in violation of Securities laws. Plaintiff contends that fourteen days after she first met with the Vice President of Human Resources to report the violations and eight days after emailing the CEO of the company, she was terminated.

Defendants move for summary judgment and assert that Plaintiff did not engage in protected activity. Moreover, Defendants contend that Plaintiff was terminated during her initial ninety day probationary period because of personality conflicts with her coworkers and her inability to get along them and not for any protected activity.

**3.** On the same day that Sarbanes–Oxley was enacted, Plaintiff first spoke with Marilyn Gardner to express her concerns about the Jacksonville office. By August 19, 2002, less than a month after the enactment of Sarbanes–Oxley, Plaintiff had been terminated from employment. Notably, Plaintiff's complaint in this case was filed with this Court on · May 20, 2003 and preceded the Regulations issued by the Department of Labor for the handling of discrimination complaints which became effective on May 28, 2003. It appears, therefore, that Plaintiff's claims are

## III. The Sarbanes–Oxley Act of 2002

Plaintiff's claims arose almost in tandem with the enactment of Sarbanes–Oxley and come before the Court as a matter of first impression. The Sarbanes–Oxley Act of 2002 was enacted on July 30, 2002. *See* Procedures for Handling of Discrimination Complaints Under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes–Oxley Act of 2002, 29 C.F.R. § 1980 (2003) (hereinafter "Sarbanes–Oxley Regulations" or "the Regulations").[3] Title VIII of Sarbanes–Oxley is designated as the Corporate and Criminal Fraud Accountability Act of 2002. Section 806, codified at 18 U.S.C. § 1514A, is the provision that provides "whistleblower" protection to employees of publicly traded companies.[4] Pursuant to section 806, an employer may not discriminate against any employee in the terms and conditions of employment because of any lawful act done by the employee

(1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by—

among the first to reach the federal courts on the merits.

**4.** Publicly traded companies include any "company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)), or any officer, employee, contractor, subcontractor, or agent of such company." 18 U.S.C. § 1514A(a).

(A) a Federal regulatory or law enforcement agency;

(B) any Member of Congress or any committee of Congress; or

(C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct);

18 U.S.C. § 1514A(a)(1).

### A. Administrative procedure & federal court jurisdiction

An employee who alleges that she has been discharged or discriminated against may bring an enforcement action under 18 U.S.C. § 1514A(b). Before an employee may file in federal court, she must file a complaint with the Occupational Safety and Health Administration ("OSHA"), *id.* § 1514A(b)(1)(A), within ninety days of the date on which the violation occurred. *Id.* § 1514A(b)(2)(D); *see* 29 C.F.R. § 1980.103.[5] The Regulations governing OSHA's handling of discrimination complaints under Sarbanes–Oxley provide for an investigation, a hearing before an administrative law judge, a review by an administrative review board, and an appeal to the Circuit Court of Appeals. 29 C.F.R. § 1980. The administrative scheme underlying the Sarbanes–Oxley Act has been described as "judicial in nature" and designed to resolve the controversy on its merits. *Willis v. Vie Fin. Group*, No. 04–435, 2004 WL 1774575, at *5 (E.D.Pa. Aug. 6, 2004) (holding that plaintiff's failure to raise a claim in his administrative complaint with OSHA precluded him from pursuing it in district court).

■ If a final administrative decision is not issued within 180 days of the filing of the complaint and "there is no showing that such delay is due to the bad faith of the claimant," an employee may bring an action at law or in equity for de novo review in federal court. 18 U.S.C. § 1514A(b)(1)(B). In *Murray v. TXU Corp.*, 279 F.Supp.2d 799 (N.D.Tex.2003), the district court stated that a federal court would lack jurisdiction if: (1) the plaintiff failed to file a complaint with OSHA within ninety days of the alleged violation; (2) OSHA issued a final decision within 180 days of the complaint; (3) the plaintiff filed in district court less than 180 days after filing a complaint with OSHA; or (4) there was a showing that OSHA failed to issue a final decision within 180 days due to the plaintiff's bad faith. *Id.* at 802.[6] Therefore, a plaintiff's ability to file in federal court is not premised on a showing of plaintiff's good faith, but is based on a failure to show that the delay was a result of the plaintiff's bad faith. *See Murray*, 279 F.Supp.2d at 804 n. 6.

■ In this case, Plaintiff was terminated on August 19, 2002.[7] She filed her complaint with OSHA in October 2002,

---

**5.** The statute provides that an employee must file a complaint with the Secretary of Labor. 18 U.S.C. § 1514A(b)(1)(A). The Secretary of Labor has delegated that responsibility to OSHA. Secretary's Order 5–2002; Delegation of Authority and Assignment of Responsibility to the Assistant Secretary for Occupational Safety and Health, 67 Fed.Reg. 65008–01 (Oct. 22, 2002); *see* 29 C.F.R. § 1980.103(c).

**6.** The Regulations also provide that a plaintiff must file a notice of her intent to file a complaint in federal court fifteen days in advance of filing the complaint in federal court. 29 C.F.R. § 1980.114(b).

**7.** Defendants suggest that Plaintiff is not a covered "employee" as defined in Sarbanes–Oxley. The Sarbanes–Oxley Regulations define an employee as "an individual presently or formerly working for a company or company representative ... or an individual whose employment could be affected by a company or company representative." 29 C.F.R. § 1980.101. A "company representative" is defined as "any officer, employee, contractor, subcontractor, or agent of a company." *Id.* Plaintiff is within the definition of employee because her employment could be affected by officers of Beazer USA. (*See* Jones Dep. at 24–25 (stating that officers of Beazer USA had

within the required ninety day time period. OSHA did not issue its findings until May 22, 2003. Defendants state that after almost eight months of investigation, OSHA found Plaintiff had not shown a violation of federal law. Plaintiff states that during this time period significant amounts of time were devoted to settlement talks. The OSHA investigative file indicates that a great deal of time was spent in settlement negotiations. (*See generally* OSHA file.)[8] Because OSHA failed to issue findings within 180 days and there was no showing of bad faith, jurisdiction in this case is proper.[9]

## B. Legal burdens of proof

Given the scarcity of caselaw on Sarbanes–Oxley, the Court must look to caselaw applying provisions of other federal whistleblower statutes for guidance.[10] The Sarbanes–Oxley Regulations specifically

indicate that consideration was given to the regulations implementing the whistleblower provisions of the Wendell H. Ford Aviation Investment Reform Act for the 21st Century ("AIR 21"), 29 C.F.R. § 1979; the Surface Transportation Assistance Act ("STAA"), 29 C.F.R. § 1978; and the Energy Reorganization Act ("ERA"), 29 C.F.R. 24. *See* 29 C.F.R. § 1980 at 2. Moreover, the legal burdens of proof in Sarbanes–Oxley are taken from AIR 21, 49 U.S.C. § 42121. *See also* 42 U.S.C. § 5851(b)(3)(legal burdens of proof for whistleblowing under ERA).

 When a plaintiff files suit in federal court under Sarbanes–Oxley, the court conducts a de novo review of the plaintiff's claim. 18 U.S.C. § 1514A(b)(1)(B). The evidentiary framework for a claim under Sarbanes–Oxley is specifically set forth in the statute. *Id.* § 1514A(b)(2)(C).[11] An action brought un-

---

authority to affect the employment of employees of subsidiaries).)

8. The OSHA file suggests that the delay in issuing findings may have been attributable in some part to Plaintiff's failure to cooperate with OSHA investigators and misrepresentations to OSHA regarding representation by legal counsel. (OSHA file at 00058–61.) Moreover, it appears that the delay was due in some part to settlement negotiations and additional time requested by Plaintiff to consider settlement offers. (*Id.* at 00036–37.) It is unclear to the Court whether and to what extent OSHA's failure to issue findings within 180 days was due to the acts and/or omissions of Plaintiff, or whether these actions would be considered bad faith such that federal court jurisdiction would be improper. In this case, however, the mere suggestion of such in the OSHA file absent a greater showing is insufficient to defeat this Court's jurisdiction over Plaintiff's claims.

9. There is no evidence that Plaintiff gave fifteen days notice of her intent to file in federal court as is required pursuant to 29 C.F.R. § 1980.114(b). Even though this requirement is found in the portion of the Regulations covering "District Court jurisdiction of discrimination complaints" the Court need not

determine whether this requirement is a jurisdictional prerequisite in this case because Plaintiff filed her complaint on May 20, 2003, eight days before the Regulations went into effect on May 28, 2003.

10. The parties have also cited the decisions of the Office of Administrative Law Judges from the United States Department of Labor. The Court acknowledges that these decisions may provide some guidance in that Sarbanes–Oxley provides the same evidentiary framework in those cases as in this one. They differ, however, in the standard to be applied. Whereas those cases determine whether the complainant is entitled to relief, the present case is before the Court on a motion for summary judgment. Therefore, unlike the ALJ decisions, this Court is required to view the facts in a light most favorable to the plaintiff non-movant. Moreover, this Court is bound to follow the decisions of the Eleventh Circuit Court of Appeals.

11. The evidentiary framework to be applied in Sarbanes–Oxley is an analysis different from that of the general body of employment discrimination law. *Stone & Webster Eng'g, Corp. v. Herman,* 115 F.3d 1568, 1572 (11th

der Sarbanes–Oxley "shall be governed by the legal burdens of proof set forth in section 42121(b) of title 49, United States Code." *Id.*[12]

▆▆▆ Under the statutory framework, a plaintiff in federal court must show by a preponderance of the evidence that the plaintiff's protected activity was a contributing factor in the unfavorable personnel action alleged in the complaint. 49 U.S.C. § 42121(b)(2)(B)(iii).[13] That is, the plain-

tiff must show by a preponderance of the evidence that (1) she engaged in protected activity; (2) the employer knew of the protected activity; (3) she suffered an unfavorable personnel action; and (4) circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable action. *See Stone & Webster,* 115 F.3d at 1573 (analyzing these factors under provisions of ERA); *Bechtel Constr. Co. v. Sec'y of Labor,* 50 F.3d 926, 933–34 (11th Cir.1995) (same).[14] Proximity in

---

Cir.1997). In *Stone & Webster,* the plaintiff sued under the ERA, 42 U.S.C. § 5851. The parties disputed the extent to which the evidentiary framework in § 5851 drew on the general law of employment discrimination. *Id.* The Eleventh Circuit suggested that the confusion arose from the use of the term "prima facie" in the ERA because the phrase "invoked the sprawling body of general employment discrimination law." *Id.* The court noted, however, that in 1992 Congress had amended the ERA to codify a particular framework regarding burdens of proof where no statutory guidance existed before and that the ERA was clear and supplied its own freestanding evidentiary framework. *Id.* As the Court has noted, the legal burdens in Sarbanes–Oxley mirror the provisions in the ERA as discussed in *Stone & Webster.* Therefore, while reference to the general body of employment discrimination law may provide guidance in some areas, where the statute provides a specific framework the Court follows the statute.

**12.** Section 806 refers to the evidentiary framework in 49 U.S.C. § 42121(b) as governing both the administrative procedure before OSHA and the filing of a complaint in federal court. It also contains a "gatekeeper test" that permits OSHA to dismiss a complaint prior to an investigation if a complainant fails to make a prima facie showing or the defendant can show by clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of such behavior. *Stone & Webster,* 115 F.3d at 1572; *see* 49 U.S.C. § 42121(b)(2)(B)(i)-(ii). Though stated in similar language, this is a separate inquiry from the one the court makes when a plaintiff files in federal court. *See* 49 U.S.C. § 42121(b)(2)(B)(iii)-(iv).

**13.** 49 U.S.C. § 42121(b)(2)(B)(iii) states in pertinent part that a determination that a violation occurred may be made only if "the complainant demonstrates that any [protected] behavior ... was a contributing factor in the unfavorable personnel action alleged in the complaint." In *Dysert v. Sec'y of Labor,* 105 F.3d 607 (11th Cir.1997), the Eleventh Circuit Court of Appeals examined the proper application of the statutory burdens of proof in the whistleblower protection provisions of the ERA, 42 U.S.C. § 5851(b)(3). *Id.* at 608. Notably, like the legal burden of proof in this case under 49 U.S.C. § 42121(b)(2)(B)(iii), the language in the ERA stated that a finding that a violation occurred was proper only if "the complainant has demonstrated" certain behavior. In *Dysert* the Eleventh Circuit found that the term "demonstrated" was ambiguous, and therefore, left room for an administrative interpretation. *Id.* at 609. The court noted that the Secretary had interpreted "demonstrated" to mean "proved by a preponderance of the evidence." The plaintiff in that case argued that he should only be required to prove a prima facie showing of discrimination before the burden shifted to the defendant to prove by clear and convincing evidence that it would have terminated him even absent his protected activity. The Eleventh Circuit noted that the Secretary believed that something more than a prima facie showing was required and that the Secretary emphasized that the party with the burden of persuasion must establish the elements of its case by a preponderance of the evidence. *Id.* at 609–10. The Eleventh Circuit held that to be a reasonable interpretation which was entitled to deference. *Id.* at 610.

**14.** The Court in *Bechtel* applied the legal burdens of proof from the general body of em-

time is sufficient to raise an inference of causation. *Bechtel*, 50 F.3d at 934. The defendant employer may avoid liability if it can demonstrate by clear and convincing evidence that it "would have taken the same unfavorable personnel action in the absence of [protected] behavior." 49 U.S.C. § 42121(b)(2)(B)(iv).

In their motion for summary judgment, Defendants first contend that Plaintiff did not engage in protected activity, but that even if she did, she cannot demonstrate that her alleged protected activity was a contributing factor in her termination. Defendants also assert that Plaintiff would have been terminated regardless of her protected activity.

### 1. *Whether Plaintiff engaged in protected activity*

■ Sarbanes–Oxley protects employees who provide information which the employee "reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1). Therefore, a plaintiff is not required to show an actual violation of the law, but only that she "reasonably believed" that there was a violation of one of the enumerated laws or regulations. *Id.; see Passaic Valley Sewerage Comm'rs v. United States Dep't of Labor*, 992 F.2d 474 (3d Cir.1993)(noting that even where "the [employee's] perceived oversights were a matter of employee misunderstanding" an employee should be protected in his intracorporate disclosure to provide the company with the first opportunity to justify or clarify its policies). The legislative history of Sarbanes–Oxley states that the reasonableness test "is intended to impose the normal reasonable person standard used

and interpreted in a wide variety of legal contexts." Legislative History of Title VIII of HR 2673: The Sarbanes–Oxley Act of 2002, Cong. Rec. S7418, S7420 (daily ed. July 26, 2002), *available at* 2002 WL 32054527 (hereinafter "Legislative history") (citing *Passaic Valley*, 992 F.2d 474 (3d Cir.1993)). "The threshold is intended to include all good faith and reasonable reporting of fraud, and there should be no presumption that reporting is otherwise, absent specific evidence." *Id.*

■ Defendants assert that Plaintiff did not engage in protected activity because she never specifically alleged securities or accounting fraud and because her complaints were too vague to constitute protected activity. Defendants contrast the type of disclosures made by Sherron Watkins, the former Enron Vice President, to the disclosures made by Plaintiff. Defendants point out that Watkins was an accountant whose job it was to review Enron's securities, that she outlined specific accounting procedures and transactions about which she was concerned, and that she expressed concerns that specific securities laws were being violated. By contrast, Defendants contend, Plaintiff was the Director of Marketing who expressed only vague concerns that amounted to nothing more than personality conflicts and differences in marketing strategies.

Plaintiff points to four specific disclosures which she made that she alleges are within the coverage of Sarbanes–Oxley. Plaintiff states that (1) she alleged that the division was knowingly overpaying invoices to Montello (Jones Dep. at 41, 118.); (2) the division was using Montello because of a personal relationship between management and Montello (*Id.* at 41, 49, 69.); (3) Hashem was violating the division's com-

---

ployment discrimination law because the plaintiff's claims in that case arose prior to

the enactment of the 1992 amendment which codified the present evidentiary framework.

missions scheme by overpaying sales agents who were her personal friends (*Id.* at 55–58.); and (4) there were kickbacks involving the purchase of lumber (*Id.* at 78; Gardner Dep. Ex. 5.). Plaintiff contends that these disclosures are protected because they allege attempts to circumvent the company's system of internal accounting controls and therefore state a violation of Section 13 of the Exchange Act.[15]

The Court finds that Defendants cannot establish as a matter of law that Plaintiff did not engage in protected activity under Sarbanes–Oxley. Though this is a close case, considering the posture of the case, the lack of guidance in the caselaw and the broad remedial purpose behind Sarbanes–Oxley, the Court finds that there is a genuine issue of material fact whether Plaintiff engaged in protected activity.[16] It is evident that Plaintiff's complaints do not rise to the level of complaints that were raised by Sherron Watkins at Enron. However, the mere fact that the severity or specificity of her complaints does not rise to the level of action that would spur Congress to draft legislation does not mean that the legislation it did draft was not meant to protect her. In short, if Congress had intended to limit the protection of Sarbanes–Oxley to accountants, or to have required complainants to specifi-

cally identify the code section that they believe was being violated, it could have done so. It did not. Congress instead protected "employees" and adopted the "reasonable belief" standard for those who "blow the whistle on fraud and protect investors." Legislative history at S7420; *see* 18 U.S.C. § 1514A(a).

Additionally, though Defendants contend that Plaintiff's complaints were too vague to constitute protected activity, the individuals to whom they were addressed understood the serious nature of Plaintiff's allegations. For instance, after her initial conversation with Plaintiff, Gardner understood Plaintiff's complaints regarding the payment of invoices and miscategorization of invoices as a "serious allegation" that raised questions about improper accounting. (Gardner Dep. at 67, 69.) After Jones met with Plaintiff on August 5, 2002, she began to investigate Plaintiff's claims in order to determine whether there was something that may be criminal, against the law or against company policy, including violations of the company's Standards of Corporate Conduct. (*Id.* at 52–53, 70.)[17] The Court agrees with Defendants that the connection of Plaintiff's complaints to the substantive law protected in Sarbanes–Oxley is less than direct. How-

---

**15.** Section 13 of the Securities Exchange Act of 1934 requires companies to "devise and maintain a system of internal accounting controls." 15 U.S.C. § 78m(b)(2)(B). Section 13 further states that "No person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls." *Id.* at 78m(b)(3)(B)(5).

**16.** Defendants insist that OSHA found that "the preponderance of *credible evidence* did not support [Plaintiff's] contention that she provided information alleging a violation of any federal law regarding [Defendants'] conduct." (OSHA findings at 00003.) (emphasis added). First of all, this Court is charged with conducting a de novo review and is not required to give deference to the agency's

findings. Furthermore, it is not for this Court on a motion for summary judgment to determine the credibility of the evidence, but only whether there exists a genuine issue of material fact. The Court finds that such an issue does exist.

**17.** Jones was involved in the development of the company's Standards of Corporate Conduct. They are used to "guide the company [in] the use of the assets of the company, for the benefit of the shareholders of the company." (Jones Dep. at 33.) She also recognized that the Standards of Corporate Conduct were part of the company's internal controls, meant to make sure that the company's assets are being used for the benefit of the company and the shareholders. (*Id.* at 35–36.)

ever, Plaintiff's allegations detailed violations of the company's internal accounting controls in favor of preferential treatment based on personal relationships.

After an investigation, Defendants ultimately determined that some of Plaintiff's allegations lacked merit.[18] However, this does not change the fact that they understood the nature and type of allegations that she made and that those allegations were within the zone of protection afforded by Sarbanes–Oxley. *See* Legislative history at S7420 ("Certainly, although not exclusively, any type of corporate or agency action taken based on the information, or the information constituting admissible evidence at any later proceeding would be strong indicia that it could support such a reasonable belief.")[19] Because reasonable jurors could find by a preponderance of the evidence that Plaintiff engaged in protected activity, Defendants are not entitled to judgment as a matter of law.

### 2. *Whether Defendants knew of Plaintiff's protected activity*

■ Sarbanes–Oxley protects employees who provide information to any "person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)." 18 U.S.C. § 1514A(a)(1)(C). Plaintiff made numerous complaints to her supervisors, including complaints to Gardner, a meeting with Jones, an email to

Gardner, an email to McCarthy and her final meeting with Shaffer. Defendants do not contest that they were aware of Plaintiff's complaints. Defendants, however, assert that Shaffer was the sole decision maker in Plaintiff's termination and that he did not know of Plaintiff's letters to Gardner and McCarthy. Shaffer did, however, discuss Plaintiff with Jones including Plaintiff's series of complaints, discussion of payment of the Montello invoices (Jones Dep. at 50), and the circumstances in which it would be acceptable for him to terminate her. (Jones Dep. at 71–74.) To permit an employer to simply bring in a manager to be the "sole decisionmaker" for the purpose of terminating a complainant would eviscerate the protection afforded to employees by Sarbanes–Oxley. The Court finds that Defendants were aware of Plaintiff's protected activity.

### 3. *Whether Plaintiff suffered an unfavorable personnel action*

■ Plaintiff suffered an unfavorable personnel action when she was terminated on August 19, 2002.

### 4. *Whether circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable action*

Under the evidentiary framework, Plaintiff must also establish that there are circumstances which suggest that the pro-

---

**18.** Plaintiff emphasizes that although Defendants conducted an investigation, it was improperly conducted by Human Resources. According to Defendants' own policies it should have been conducted by an internal audit. The investigation was conducted by Jones, then the Vice President of Human Resources. Furlow, Executive Vice President and Chief Operating Officer stated that allegations of overpayment to an advertising agency and use of an agency for improper reasons should be investigated by an internal audit. (Furlow Dep. at 30–32.) He also stated that

Jones, as Vice President of Human Resources would not be the appropriate person to conduct an investigation into these types of concerns because the allegations were not "human resources issues" because they involved operation of the division rather than complaints about an individual. (*Id.* at 30–34.)

**19.** Jones' investigation into Plaintiff's complaint regarding the Director of Sales, Mary Ann Hashem, ultimately resulted in Hashem being reprimanded and terminated. (Jones Dep. at 63; Mazar Dep. Ex. 10.)

tected activity was a contributing factor to the unfavorable action.· 49 U.S.C. § 42121(b)(2)(B)(iii); *see Marano v. Dep't of Justice*, 2 F.3d 1137, 1140 (Fed.Cir.1993)(stating that under the Whistleblower Protection Act, 5 U.S.C. § 1221(e)(1), "[t]he words 'a contributing factor' . . . mean any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision" and noting that "[t]his test is specifically intended to overrule existing case law, which requires a whistleblower to prove that his protected conduct was a 'significant,' 'motivating,' 'substantial,' or 'predominant' factor in a personnel action in order to overturn that action."). Defendants contend that Plaintiff cannot establish the causal connection because the person responsible for firing her, Shaffer, was not aware of Plaintiff's letters to McCarthy and Gardner and because she did not bring any illegal activities to Shaffer's attention.[20] Defendants further state that temporal proximity is not sufficient to create circumstances to suggest causation. Plaintiff responds that Shaffer was in fact aware of prior complaints that she made alleging violations of company policy and that the fact that she was fired fourteen days after complaining to Jones establishes the circumstances sufficient to demonstrate causation.

■ The Court finds that the temporal proximity between the time when Plaintiff made her complaints and the time she was terminated is sufficient to establish circumstances which suggest that protected activity was a contributing factor to the unfavorable personnel action. *See* 29 C.F.R. § 1984.104(b)(2)(stating that for purposes of determining whether complaint on its face demonstrates causation sufficient to investigate and that "[n]ormally, the burden is satisfied, for example, if

the complaint shows that the adverse personnel action took place shortly after the protected activity."); *Bechtel,* 50 F.3d at 934 (stating that under whistleblower provisions of ERA, proximity in time is sufficient to raise an inference of discrimination); *see also Stone & Webster,* 115 F.3d at 1573 (noting that one day separation from protected conduct to demotion, along with other circumstances, raised inference of causation).

Although Defendants cite *Wascura v. City of South Miami,* 257 F.3d 1238, 1248 (11th Cir.2001), for the proposition that temporal proximity alone is not sufficient to establish causation in the Eleventh Circuit, the holding in that case is not as broad as Defendants suggest. In that case, the Eleventh Circuit upheld the district court's grant of summary judgment on the plaintiff's claim for interference with rights under the Family Medical and Leave Act. *Id.* at 1248. The plaintiff claimed that she was terminated because she stated that she may need time off from work to care for her son's medical needs. The court held that in light of conflicting evidence before the court, "the three and one-half month temporal proximity is insufficient to create a jury issue on causation." *Id.*

Here, Plaintiff first complained to Jones on August 5, 2002 and was terminated fourteen days later on August 19, 2002. Therefore, the proximity in time provides the circumstances to suggest that the protected activity was a contributing factor to the unfavorable personnel action. Moreover, it is clear that Shaffer had discussed Plaintiff's complaints with Jones and was aware that she had complained about violations of company policy when he terminated her. (Shaffer Dep. at 68–70.)

---

**20.** Plaintiff states that she did not bring illegal activity to Shaffer's attention because she believed that he was involved in the wrongdoing. (Collins Dep. at 183.)

Reasonable jurors could find that Plaintiff has established by a preponderance of the evidence that she engaged in protected activity, that Defendants knew of her protected activity, that she suffered an unfavorable personnel action and that circumstances exist which create an inference that the protected activity was a contributing factor to the unfavorable personnel action. Therefore, Defendants are not entitled to judgment as a matter of law. If Defendants can show by clear and convincing evidence, however, that they would have taken the same unfavorable personnel action in the absence of that behavior, then they may avoid liability. 49 U.S.C. § 42121(b)(2)(B)(iv).

5. *Whether Defendants can show that they would have taken the same unfavorable personnel action in the absence of Plaintiff's protected activity*

Only if Defendants can establish by clear and convincing evidence that they would have fired Plaintiff absent her participation in protected activity, would Defendants be entitled to summary judgment. *See Stone & Webster*, 115 F.3d at 1572 (recognizing under the same evidentiary framework in the ERA that "[f]or employers, this is a tough standard"). Defendants argue that Shaffer was the sole decision maker with regard to Plaintiff's termination and that she was terminated for three reasons: (1) personality conflicts with her co-worker and manager; (2) Mazar's dissatisfaction with her; and (3) Shaffer's belief that Plaintiff had made a presentation that was "way off the mark." (Shaffer Dep. at 38–39.) [21]

The Court finds that Defendants have not established by clear and convincing evidence as a matter of law that they would have terminated Plaintiff even absent her protected activity. First of all, Defendants contend that Shaffer fired Plaintiff based on her personality conflicts with Hashem and Mazar and based on Mazar's dissatisfaction with her performance. While Plaintiff does admit that there was a conflict among the three of them, Mazar stated that he did not believe he had a personality conflict with Plaintiff. (Mazar Dep. at 166.) Mazar stated that he had discussed some concerns about Plaintiff's job performance with Shaffer, (*id.* at 91–92), but he had not yet made the decision to terminate her and was planning to meet with her to discuss the problems. (*Id.* at 94–96.) Moreover, Mazar may have expressed some concerns to Shaffer, but he was not involved in the decision to terminate Plaintiff and did not learn of her termination until after the fact. (*Id.* at 89.) It appears that none of her supervisors ever met with Plaintiff to discuss her job performance or the personality conflicts prior to her termination. (Collins Dep. at 187.) Finally, the only discussion where Defendants discussed the potential termination of Plaintiff took place between Jones and Shaffer and did not involve Mazar, who was Plaintiff's direct supervisor and one of the individuals with whom Defendants stated that she had the personality conflict.

Defendants in their representations to OSHA indicated that reasons for Plaintiff's termination were her "discontent with her job" and her "extreme unhappiness" with the company. (McCarthy Dep. Exs. 4,5) It is evident that Plaintiff made numerous complaints to her supervisors, many of which would not constitute protected activity under Sarbanes–Oxley. To allow De-

---

**21.** The parties frame their arguments in the language of general employment discrimination law discussing "legitimate non-discriminatory reasons" and "pretext." The Court analyzes Defendants' argument under the clear and convincing standard articulated in 49 U.S.C. § 42121.

fendants to obtain summary judgment by singling out these complaints and insisting that only unprotected complaints were the basis for their action against Plaintiff would thwart the purpose of Sarbanes–Oxley. *See Stone & Webster,* 115 F.3d at 1570. Again, whether Defendants would have terminated Plaintiff absent her protected activity presents a close question. It appears that she got off on the wrong foot with some of her co-workers from the very beginning, (Collins Dep. at 206), and that her supervisors had some concerns about her ability to adapt to the home building industry. (Mazar Dep. at 91.) It also appears that Mazar thought she did a good job with respect to Internet marketing and the hiring of the new marketing firm, an area of purported dispute. (*Id.* at 93.) Though Defendants emphasize that Plaintiff was in her ninety day assessment period, the short history of Plaintiff's employment only makes it more difficult to discern whether the problems that Plaintiff had would have ultimately resulted in her termination absent participation in protected activity or whether they would have simply been addressed and resolved. Because there is a genuine issue of material fact whether Defendants have established by clear and convincing evidence that they would have fired Plaintiff absent her protected activity, Defendants are not entitled to judgment as a matter of law.

## IV. Florida's Whistleblower's Act

Plaintiff has also asserted claims under the Florida Whistleblower's Act ("FWA"), Fla. Stat. § 448.102. Pursuant to the FWA

An employer may not take any retaliatory personnel action against an employee because the employee has:

(1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. . . .

(2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.

(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

Fla. Stat. § 448.102. Courts that have addressed the FWA have applied the analysis used in Title VII retaliation cases. *Sierminski v. Transouth Fin. Corp.,* 216 F.3d 945, 950 (11th Cir.2000); *Padron v. BellSouth Telecommunications, Inc.,* 196 F.Supp.2d 1250, 1255 (S.D.Fla.2002).

To prove a prima facie case a plaintiff must establish: (1) participation in statutorily protected activity; (2) that there was an adverse employment action; and (3) that there was a causal link between the participation and the adverse employment action. *Padron,* 196 F.Supp.2d at 1255. The burden then shifts to the defendant to offer a legitimate non-discriminatory reason for the adverse employment action. *Id.* The defendant does not bear the burden of persuasion which remains with the plaintiff. *Id.* The plaintiff may carry that burden by showing that the plaintiff's engagement in the protected activity was a significant factor in the employer's decision. *Id.* (quoting *Bigge v. Albertsons, Inc.,* 894 F.2d 1497, 1501 (11th Cir.1990)).

Plaintiff contends that she engaged in protected activity under § 448.102(3) which prohibits retaliation against an employee who "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3). Plaintiff states that she was asked to approve and pay invoices to Montello that were improper. (Collins Dep. at 171.) Plaintiff also asserts

that the close temporal proximity of her complaints to her termination establishes the causal connection required to show a prima facie case. After Plaintiff spoke with Jones on August 5, 2002, Jones specifically spoke with Shaffer regarding payment of the Montello invoices. (Jones Dep. at 50.) The Court finds that the close temporal proximity establishes the required causal connection and Plaintiff has stated a prima facie case. *See Shotz v. City of Plantation,* 344 F.3d 1161, 1180 n. 30 (11th Cir.2003).

■ As discussed above, Defendants state that Plaintiff was terminated for legitimate non-discriminatory reasons because of personality conflicts with her co-worker and manager, Mazar's dissatisfaction with her job performance, and Shaffer's belief that Plaintiff had made a presentation that was way off the mark. Once defendant has come forward with a legitimate reason, the presumption of discrimination is eliminated and Plaintiff is required to present evidence that the reason given by Defendants was not the real reason for the termination. *Padron,* 196 F.Supp.2d at 1256. Plaintiff contends that Defendants stated reasons are pretextual because Defendants terminated Plaintiff based on her complaints and Defendants' stated reasons have shifted over time.

Although the Court acknowledges that Defendants' description of the stated reasons for terminating Plaintiff have shifted slightly over time, the Court agrees with Defendants that there is nothing inconsistent about its given reasons. Describing Plaintiff as having a "personality conflict"

is not inconsistent with describing her as "not fitting in the division." The Court does find, however, that Plaintiff has presented evidence that Defendants terminated her because she engaged in protected conduct, including her refusal to pay the Montello invoices. As discussed above, Defendants' explanations that Plaintiff was "unhappy" and that she was terminated based on her "discontent" appear to be little more than recognition that she was terminated based on her complaints. Finally, Shaffer's explanation that Plaintiff made a presentation that was "way off the mark" appears to be an after the fact justification which at the time of Plaintiff's termination he neither relied on nor shared with others as a reason for Plaintiff's termination. (*See* Jones Dep. at 72; McCarthy Dep. at 34–35.) Given that Mazar, Plaintiff's direct supervisor did not believe he had a personality conflict with Plaintiff, it is impossible for the Court to say that Defendants are entitled to judgment as a matter of law on the grounds that Plaintiff was terminated based on a personality conflict.

### Conclusion

Defendants' Motion to Strike Plaintiff's Designation of Expert Witnesses [32–1] is hereby **DENIED**. Defendants' Motion for Summary Judgment [39–1] is hereby **DENIED**. The parties are directed to file a consolidated pre-trial order within thirty (30) days of the date of entry of this Order.