**David E. SMITH, Plaintiff,**

v.

**CORNING INCORPORATED, and D'Ann Grell, Defendants.**

**No. 06 CV 6516 CJS.**

United States District Court, W.D. New York.

July 9, 2007.

Patrick J. Boyd, Esq., The Boyd Law Group PLLC, New York, for the Plaintiff.

Carolyn G. Nussbaum, Esq., Nixon Peabody LLP, Rochester, for the Defendants.

## DECISION AND ORDER

SIRAGUSA, District Judge.

## INTRODUCTION

This is an action brought pursuant to the "whistleblower" anti-retaliation provision of the Sarbanes–Oxley Act of 2002 ("the Act"), 18 U.S.C. § 1514A(a)(1). Now before the Court is defendant Corning Incorporated's ("Corning") motion [# 4] to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). For the reasons that follow, the application is denied.

## BACKGROUND

Unless otherwise noted, the following facts are taken from plaintiff's complaint [# 1] in this action. At all relevant times, Corning was "a company with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 781) and [was] required to file annual reports and quarterly reports for

each fiscal year with the SEC." (Complaint [# 1] ¶ 95) Corning's reports, in that regard, were required to be prepared in compliance with generally accepted accounting principles ("GAAP"). (*Id.* at ¶ 96) Moreover, Corning was required to maintain "a system of internal accounting controls" that complied with GAAP, pursuant to Section 13(b)(2)(B) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78m(b)(2)(B).

In 2001 plaintiff began working for Corning as a Senior Financial Analyst in the Information Technology Department. In early 2005, defendant D'Ann Grell ("Grell"), Corning's Director of Global Portfolio Management, recruited plaintiff to become the Program Manager for Corning's Finance and Accounting Global Project Portfolio Management Group, and Grell became plaintiff's immediate supervisor. In his position as Program Manager, plaintiff was "responsible for monitoring [Corning's] compliance with GAAP with regard to its Global Portfolio financial system and financial process duties." (Complaint ¶ 27) Additionally, plaintiff was "charged with the task of assisting all financial groups in the sub-ledger process and monitoring the consolidation of the financial material from such groups as it was prepared for reporting to the Securities and Exchange Commission ('SEC')." (*Id.* ¶ 28)

In March 2005, plaintiff was directed "to work on and monitor the implementation process for a system called PeopleSoft 8.8" ("PS 8.8"), which was a type of Enterprise Resource Planning ("ERP") software, designed to "integrate all data and processes of an organization into a unified system." (*Id.* at ¶ ¶ 29–30) According to plaintiff, PS 8.8 was a "troublesome" product, which was difficult to implement and which could, when improperly implemented, result "in incorrect reporting of financial data." (*Id.* at ¶ part 33–38) In the Spring and Summer of 2005, plaintiff observed that Corning's PS 8.8 program "was not correctly reporting financial data, [which] affected the reporting of sub-ledgers to the general ledger, making the general ledger incorrect." (*Id.* at ¶ 41) Specifically, plaintiff observed "reporting errors in numerous financial streams including Foreign Exchange, Asset Management, and Project Costing." (Id. at ¶ 42) The complaint does not indicate the dollar amounts of the errors. Nevertheless, plaintiff believed that the errors were "serious," and "would impact the integrity of Corning, Inc.'s quarterly reports." (*Id.* at ¶ 44)

Plaintiff reported the problems that he was observing with PS 8.8 to Grell and to Chad Keenan ("Keenan"), the individual in charge of Corning's PS 8.8 deployment. (*Id.* at ¶ ¶ 46–49) Plaintiff also asked Grell and Keenan to provide him with the PS 8.8 program's "design documents," which, he indicates, were "standard industry documents used to ensure GAAP compliance." (*Id.* at ¶ ¶ 43, 46–49) Plaintiff alleges that he needed the design documents "to properly diagnose the problems causing the reporting errors, and to assess the effect of PS 8.8's installation from a financial perspective." (*Id.* at ¶ 49) In response to plaintiff's reports concerning reporting errors, neither Grell nor Keenan gave plaintiff responses that were "adequate" or "engaging," nor did they provide him with the requested design documents. (*Id.* at ¶ ¶ 50–51.)

Subsequently, plaintiff "began to suspect that [Grell and Keenan] were deliberately disregarding Corning Inc.'s compliance obligations and sacrificing financial integrity for expediency in the deployment of PS 8.8." (*Id.* at ¶ 57) In that regard, plaintiff had observed that Grell was also "disregarding concerns and requests for information" of other employees in the accounting group. Nevertheless, plaintiff

continued to "communicate his concerns" about PS 8.8 to Grell. However, Grell did nothing to address the reporting errors. Instead, Grell and Keenan told plaintiff that he would no longer be involved in validating the PS .8 deployment. (*Id.* at ¶¶ 60–61)

Plaintiff subsequently reported his "on-going concerns about GAAP compliance and [about] Grell's conduct" to Corning's Human Resources Manager, Deidre Elleman ("Elleman"). However, Elleman did not investigate plaintiff's complaints, and instead, she "reported" plaintiff's complaints back to Grell. (*Id.* at ¶¶ 64–66) Shortly thereafter, Grell informed plaintiff that he was not meeting her expectations, and she placed plaintiff on a "Performance Improvement Plan." Plaintiff maintains that Grell's actions in this regard were retaliatory, and that prior to his complaints about PS 8.8 Grell had praised his job performance.

Thereafter, plaintiff called Corning's "ethics hotline" to complain about the situation. Specifically, in his call to the hotline, plaintiff "described his concerns about the financial reporting issues with respect to PS 8.8 and about the risks that such issues could create for Corning's financial records," and he also indicated that Grell was guilty of "unethical behavior." (*Id.* ¶¶ 75–77) Plaintiff alleges, however, that Corning never adequately investigated this complaint. Instead, on December 2, 2005, Corning demoted plaintiff to a different position under a different supervisor, and on January 9, 2006, Corning terminated his employment altogether.

After his termination, petitioner filed a complaint with the Secretary of Labor. In his administrative complaint, plaintiff related the facts set forth above, and alleged that he was fired in retaliation for his attempts to address the problems with the PS 8.8 implementation. An Administrative Law Judge subsequently dismissed plaintiff's complaint, finding that plaintiff had not engaged in "protected activity" under the Act. Plaintiff appealed that decision, and after exhausting his administrative remedies, commenced the subject lawsuit on October 17, 2006.

Plaintiff's complaint in this action purports to allege two causes of action for retaliation under the Act: one against defendant Corning, and one against defendant Grell. In each case, plaintiff contends that by complaining about the problems with PS 8.8, he engaged in protected activity, for which defendants retaliated against him. With regard to the protected nature of the activity, plaintiff indicates that his complaints were protected because they pertained to a violation of Section 13(b)(2)(B) of the Securities Exchange Act of 1934, as amended, which provides, in relevant part:

> Every issuer which has a class of securities registered pursuant to section 78l of this title and every issuer which is required to file reports pursuant to section 78o(d) of this title shall—
>
> \*     \*     \*     \*     \*     \*
>
> (B) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that—
>
> \*     \*     \*     \*     \*     \*
>
> (ii) transactions are recorded as necessary (I) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (II) to maintain accountability for assets;

15 U.S.C.A. 78m(b)(2)(B)(ii).

On January 16, 2007, Corning filed its application to dismiss the complaint for failure to state a claim. Specifically, Corning contends that the complaint fails to plead that plaintiff engaged in protected activity, as required by the Act. In that

regard, Corning contends that plaintiff's complaints are not protected because they did not involve an actual fraud on investors. (Def. Memo of Law p. 3) ("[F]raud is an integral element of claims under [§ 1514A].") Corning further contends that because § 1514A claims necessarily involve fraud, the fraud must be pled with particularity, pursuant to FRCP 9(b), which plaintiff's complaint fails to do. Corning also maintains that the complaint fails to plead that plaintiff had any reasonable basis for believing that Corning was violating 15 U.S.C. § 78m(b)(2)(B)(ii). On this issue, defendant argues that § 78m(b)(2)(B)(ii) requires a company to maintain a *system* of internal accounting controls, and that merely alleging that Corning was having problems in one area of its accounting controls (PS 8.8) is insufficient. (Def. Memo p. 8) ("Whatever Smith's complaints about the aspects of the PS 8.8 deployment with which he was involved, he does not (and cannot) allege a basis for reasonably believing that Corning's entire system of accounting controls was so inadequate as to violate Section [78m](b)(2), which speaks to *systems*, rather than portions, of accounting controls.") (emphasis in original). Finally, Corning contends that plaintiff failed to allege that any such violation of § 78m(b)(2)(B)(ii) involved a fraud on shareholders.

Counsel for the parties appeared before the undersigned on May 24, 2007. Subsequently, the Court permitted the parties to submit supplemental briefs. The Court has thoroughly considered the parties' submissions and the comments of counsel.

## ANALYSIS

It is well settled that in determining a motion under Fed.R.Civ.P. 12(b)(6), a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers,* 192 F.3d 52, 56 (1999), *cert. denied,* 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000). While the Court must accept as true a plaintiff's factual allegations, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995)(*citing In re American Express Co. Shareholder Litig.,* 39 F.3d 395, 400–01 n. 3 (2d Cir.1994)). The Court "may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotations omitted)(*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

On a motion to dismiss pursuant to Rule 12(b)(6), the Court's "consideration is limited to the factual allegations in plaintiff['s] . . . complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993) (*citing Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992)).

Plaintiff brings this action pursuant to 18 U.S.C. § 1514A, entitled "Civil action to protect against retaliation in fraud cases." The statute provides, in relevant part:

(a) **Whistleblower protection for employees of publicly traded companies.**—No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 781), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C.

78o(d)), or any officer, employee, contractor, subcontractor, or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee—

(1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by—

\*  \*  \*  \*  \*  \*

(C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)

18 U.S.C.A. § 1514A(a)(1)(c).

Here, plaintiff alleges that his complaints are protected because he reasonably believed that the PS 8.8 reporting errors would affect the integrity of Corning's quarterly reports, which, along with Grell's and others' refusal to correct those errors, constituted a violation of a "Federal law relating to fraud against shareholders," namely, 15 U.S.C. § 78m(b)(2)(B).

■ At the outset, Corning contends that the complaint is deficient because plaintiff has not alleged that his complaints concerned an actual fraud against shareholders. However, the Court does not agree that plaintiff was required to do so. According to § 1514A, plaintiff is only required to have *reasonably believed* that the problem about which he was complaining constituted "a violation of . . . [a] provision of Federal law *relating to* fraud against shareholders." (Emphasis added); *see also, Collins v. Beazer Homes USA, Inc.*, 334 F.Supp.2d 1365, 1376 (N.D.Ga. 2004) ("[A] plaintiff is not required to show an actual violation of the law, but only that she 'reasonably believed' that there was a violation of one of the enumerated laws or regulations.") (citation and internal quotation marks omitted).

■ The Court construes the complaint to meet this standard, since it alleges that plaintiff reasonably believed that Corning was violating 15 U.S.C. § 78m(b)(2)(B)(ii), and that he believed that § 78m(b)(2)(B)(ii) related to fraud against shareholders.[12] In that regard, he alleges that Corning was implementing a financial reporting program that was not GAAP compliant, in

---

**1.** *See, S.E.C. v. World–Wide Coin Investments, Ltd.*, 567 F.Supp. 724, 747 (D.C.Ga.1983) ("It is clear that section 13(b)(2) [15 U.S.C. § 78m(b)(2)] and the rules promulgated thereunder are rules of general application which were enacted to (1) assure that an issuer's books and records accurately and fairly reflect its transactions and the disposition of assets, (2) protect the integrity of the independent audit of issuer financial statements that are required under the Exchange Act, and (3) promote the reliability and completeness of financial information that issuers are required to file with the Commission or disseminate to investors pursuant to the Exchange Act.") (footnote omitted).

**2.** The case of *Marshall v. Northrup Grumman Synoptics*, 2005–SOX–0008, 2005 WL 4889013 at \*3 (Dept. of Labor, ALJ, Jun. 22, 2005) is distinguishable, since in that case, the complainant did "not identify a specific law or regulation that [his supervisor] ha[d] violated." The same is true of *Welch v. Cardinal Bankshares Corp.*, 2003–SOX–15 at 11–12 (Dept. of Labor, ARB, May 31, 2007) (The complainant argued that his employer violated GAAP, but did not connect the alleged violation to a specific securities law or rule. Instead, he argued that GAAP violations were "ipso facto violations of the federal securities laws.")

violation of § 78m(b)(2)(B), and that Corning was refusing to correct problems with the program, which would have resulted in the issuance of incorrect quarterly reports. Presumably, incorrect quarterly reports could mislead investors. Moreover, it appears that the submission of quarterly reports that were not prepared in accordance with GAAP would also violate a "rule or regulation of the Securities and Exchange Commission," namely, 17 C.F.R. § 210.4–01(a)(1). *See, Richards v. Lexmark Int'l, Inc.*, 2004–SOX–00049, 2006 WL 3246874 at *27 (Dept. of Labor, ALJ, Jun. 20, 2006) ("Under 17 C.F.R. § 210.4–01(a)(1), financial statements to the SEC must be made in accordance with GAAP.") (citation omitted); *see also, Id.* at *28 (Finding no protected activity, noting that the plaintiff "did not suggest that there was anything fraudulent about the manner in which [his employer calculated its reports to the SEC], nor did he go so far as [to] establish that the methods used were contrary to GAAP or SEC filing requirements.").

Corning contends, however, that plaintiff's complaints should not be protected since they involve an internal accounting dispute, and only pertain to the potential for fraud occurring in the future. ( *See,* Corning Memo of Law, p. 10) ("At most, Smith Alleges that he reported supposed concerns about future *risks;* as opposed to present fraudulent violations of Section 13(b)(2) relating to shareholder fraud .... There is a crucial distinction between conduct that is alleged to be fraud and conduct that is alleged to place the employer at greater risk.") (emphasis in original). In this regard, Corning cites, *inter alia, Bishop v. PCS Admin. (USA), Inc.*, 2006 WL 1460032 (N.D.Ill. May 23, 2006) and *Harvey v. Home Depot U.S.A., Inc.*, ARB Nos. 04–114, ALJ Nos. 04–SOX–20, 36, 2006 DOLSOX 65, 2006 WL 3246905 (ARB June 2, 2006).

However, again the Court disagrees, since the cases cited by Corning are factually inapposite. For example, the *Harvey* case involved an individual who was employed by Home Depot stores as a loss prevention manager and whose complaints involved allegations of racial discrimination. *Id.* 2006 WL 3246905 at *2–4. The Administrative Review Board dismissed the complaint, finding that the alleged violations of anti-discrimination laws were not protected under the Act. ( *Id.* at *11) ("A mere possibility that a challenged practice could adversely affect the financial condition of a corporation, and that the effect on the financial condition could in turn be intentionally withheld from investors, is not enough.") Similarly, the *Bishop* case involved complaints by an employee who feared that the employer's failure to accept her recommendations regarding the drafting of a job description for the company's "Compliance Officer" could result in increased criminal sanctions if the company was convicted of criminal wrongdoing. *See, Bishop v. PCS Admin. (USA) Inc.*, 2006 WL 1460032 at *4. The district court in *Bishop* dismissed the case, finding that the plaintiff had not alleged that her employer had violated any law, let alone one covered by 15 U.S.C. § 1514A. *Id.* at *9.

In this case, on the other hand, plaintiff alleges that defendants repeatedly refused to address a problem that was resulting in incorrect financial information being reported to the company's general ledger. (Complaint ¶ 41) This is sufficient to allege protected activity for purposes of surviving a Rule 12(b)(6) motion. *See, Morefield v. Exelon Servs., Inc.*, 2004 SOX 00002, 2004 WL 5030303 at *6 (Dept. of Labor, ALJ, Jan. 28, 2004) ("[W]histleblower protection extends not only to criminal violations involving securities, bank, and postal fraud situations, but violations of any S.E.C. rule or any federal law broadly 'relating to fraud against stockholders.' Section

1514A(a)(1). The latter provision may provide ample latitude to include rules governing the application of accounting principles and the adequacy of internal accounting controls implemented by the publicly traded company in compliance with such rules and regulations."); *Mahony v. KeySpan Corp.*, No. 04–CV–554 SJ, 2007 WL 805813 at *6 (E.D.N.Y. Mar.12, 2007) (Denying summary judgment motion, noting that, "a fair and reasonable juror could find that Plaintiff reasonably believed that the company was engaging in accounting practices that needed to be corrected before its financial statements misled shareholders."); *Collins v. Beazer Homes USA, Inc.*, 334 F.Supp.2d at 1377–78 (Denying summary judgment, finding triable issue of fact as to whether complaints about "internal accounting controls" constituted protected activity.); Robert P. Riordan & Leslie E. Wood, THE WHISTLEBLOWER PROVISION OF SARBANES-OXLEY: DISCERNING THE SCOPE OF "PROTECTED ACTIVITY," 24 Hofstra Lab. & Emp. L.J. 95, 102 –103 (Fall2006) ("[I]t is critical to note that while complaints about purely internal accounting and ethical matters might fall safely outside the scope of protected activity, such is not the case when the complaint involves noncompliance with internal accounting controls promulgated in compliance with Sarbanes–Oxley mandates or SEC rules and regulations. In that case, the noncompliance itself would indeed be a violation of one of the laws enumerated in section 806.").[3]

Moreover, to the extent that Corning is maintaining that plaintiff could not have reasonably believed that it was violating § 78m(b)(2)(B)(ii), unless he first believed that Corning's entire "system of accounting controls" was deficient, the Court also disagrees. Based upon the facts as set forth above, the Court cannot say, as a matter of law at this stage of the litigation, that it would have been unreasonable for plaintiff to believe that Corning was violating § 78m(b)(2)(B)(ii), when it refused to address problems with PS 8.8 that were resulting in erroneous financial information, concerning "numerous financial streams including Foreign Exchange, Asset Management, and Project Costing," being reported to Corning's general ledger. (Complaint ¶ ¶ 42, 40–44.)

## CONCLUSION

For all of the foregoing reasons, Corning's motion to dismiss [# 4] is denied.

SO ORDERED.

---

**3.** *Also see,* Lynne Bernabei & Jason Zuckerman, "PROTECT THE WHISTLEBLOWER," National Law Journal (June 19, 2006) ( "Contravening the plain meaning of the statute, some judges have held that an employee who has raised a concern to management about a violation of an SEC rule has not engaged in protected conduct unless the issue implicates fraud against shareholders. ... An employee

who raises a concern about deficient internal controls should be protected from retaliation because these deficiencies can lead to false financial reporting. Under the narrow construction adopted by some judges, however, an employee who raises concerns about deficient internal controls would not be protected simply because the employee did not raise a concern about shareholder fraud.")